IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ROBERT H. WRIGHT, JR.,             *

    Plaintiff,                     *

vs.                                *

S/A JERALD WATSON, ASAC SGT.       *
ROBERT AUSTIN, S/A JON MEMMO,
CPL. JEREMY BOLEN, TFC MARK        *
BRACEWELL, TFC PAUL WOFFORD,
DEP. JOHN GOODRICH, CPL. MIKE      *       CASE NO. 4:15-cv-34 (CDL)
PITTS, S/A BERINOBIS, S/A DARYL
LASSITER, S/A JAMES BRADLEY        *
EVANS, DEP. ROGER CARROLL, S/A
LAUREN STINSON, and CAPT. SVEN     *
ARMBRUST, *all in their
individual capacities*,            *

    Defendants.                    *

_____

O R D E R

    Plaintiff Robert H. Wright, Jr. alleges that Defendants, who are state or local law enforcement officers, conspired to search his house even though they did not have probable cause. Compounding this unlawful infringement on his rights, Wright was subsequently arrested and prosecuted for drug crimes that he alleges Defendants knew he did not commit. Defendants' pending motions to dismiss present the question whether Defendants are immune from liability for this alleged conduct. For the reasons set forth below, the Court denies Defendants' motions to dismiss (ECF Nos. 17, 19, 21, 22) as to Wright's Fourth Amendment

unreasonable search and seizure claims against all Defendants, Wright's malicious prosecution claims against Defendant Watson, and his state law claims against all Defendants except Bolen, Bracewell, and Wofford.   Wright's malicious prosecution claims against all Defendants, except Watson, are dismissed; and as he concedes is appropriate, his state law claims against Bolen, Bracewell, and Wofford are dismissed.   Defendants' motions to stay discovery (ECF Nos. 18, 20, 23) are moot.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555.   In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.   *Id.* at 556. "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

PLAINTIFF'S FACTUAL ALLEGATIONS

Wright alleges the following facts in support of his claims.  The Court must accept these allegations as true for purposes of the pending motion.

Defendants are law enforcement officers.  Defendants Armbrust, Carroll, Goodrich, Pitts, and Watson are deputy sheriffs employed by Harris County, Georgia.  Armbrust, a captain, and Pitts, a corporal, have supervisory authority over the other Harris County deputies.  Defendants Austin, Berinobis, Evans, Lassiter, Memmo, and Stinson are law enforcement officers employed by the Columbus Consolidated Government and serve on the Metro Narcotics Task Force.  Austin, a sergeant, has supervisory authority over the other Columbus officers.  Defendant Bolen is a law enforcement officer employed by the Georgia Department of Natural Resources, and Defendants Bracewell and Wofford are Georgia state troopers.[1]  Bolen, Bracewell, and Wofford serve on the Governor's Task Force for Drug Suppression.  Goodrich and Pitts work with that Task Force.

On June 27, 2013, members of the Metro Narcotics Task Force and the Governor's Task Force for Drug Suppression conducted aerial surveillance of property in Harris County looking for marijuana crops.  Wofford and Bracewell conducted the aerial

---

[1] In his Complaint, Wright incorrectly identified Defendant Bracewell as Mark Bagwell.

surveillance in a helicopter, and Bolen, Goodrich, and Pitts served as their ground team. The team found a sizeable marijuana crop on property adjacent to property owned by Wright's wife, Lisa Wright. The crop was not on property owned by Wright or his wife. After the team contacted the Metro Narcotics Task Force, Austin, Armbrust, Berinobis, Carroll, Evans, Lassiter, Memmo, Stinson, and Watson responded to the scene.

The officers determined that the Wrights' house was the closest residence to the marijuana crop. Wright was not home, but Mrs. Wright was. The officers asked her for permission to search the house. She declined. The officers on the scene, including all Defendants, conferred and decided to seek a search warrant, knowing that they needed to make a sufficient showing of probable cause to convince a magistrate to issue the warrant. The officers decided that Watson would apply for a search warrant while the other officers remained at the Wrights' property.

Watson told the magistrate that the officers had found a marijuana crop on land adjacent to the Wright property. In his affidavit for the warrant, Watson falsely stated that the officers also saw several small marijuana plants growing on the Wright property. According to Wright, the officers did not see any marijuana plants on the Wright property because there were

4

none—and the officers knew it.   Wright alleges that Watson intentionally misled the magistrate into believing that the officers saw marijuana plants on the Wright property so they could manufacture probable cause to search the Wright property. Wright further alleges that all the other officers who were on the scene conferred with Watson on how to apply for the search warrant despite having no probable cause for a search.   Relying on the allegedly false affidavit, a Harris County magistrate issued a search warrant authorizing the officers to search the Wright property.

Watson returned to the scene with a search warrant. Several of the Defendants, including Austin, Berinobis, Carroll, Evans, Lassiter, Memmo, Stinson, and Watson, searched the property while the other Defendants secured the scene and detained Mr. and Mrs. Wright.   Defendants did not find any marijuana plants or seedlings on the Wright property.   But Defendants did find "small amounts of marijuana and remnants of marijuana cigarettes among the personal effects of Mrs. Wright." Compl. ¶ 56, ECF No. 1.   Defendants arrested both Mr. and Mrs. Wright for felony manufacture of marijuana, as well as misdemeanor possession.   They also seized vehicles, firearms, computers, and other items of personal property that belonged to Wright, contending that these items were instrumentalities used in the manufacture and sale of illegal drugs.   Watson swore out

arrest warrants charging Wright with felony manufacture of marijuana and misdemeanor possession of marijuana and drug-related objects. *Id.* ¶¶ 65-67. Watson also reported the seizure to the District Attorney, who filed a civil forfeiture action against Wright. While the civil forfeiture action was pending, Wright was deprived of possession of his property valued at $490,588.

As a result of his arrest, Wright lost his job. The civil forfeiture action and criminal charges against Wright remained pending for more than a year until the Harris County District Attorney moved the Superior Court to *nolle pros* them. Several months after the civil forfeiture action was dropped, Wright's personal property was returned to him.

Wright asserts Fourth Amendment claims against the officers in their individual capacities under 42 U.S.C. § 1983 for: (1) unreasonable search of his property, (2) unreasonable seizure of person, (3) unreasonable seizure of property, (4) malicious prosecution, and (5) civil conspiracy to violate Wright's constitutional rights.[2] Wright alleges that all Defendants personally participated in the plan to manufacture evidence to support the search warrant. Wright also alleges state law

---

[2] The State Defendants and the Harris County Defendants mistakenly construe Wright's Complaint as alleging Fourth Amendment claims against them in their official capacities, and thus they assert Eleventh Amendment immunity. Since Wright only alleges claims against Defendants in their individual capacities, the Eleventh Amendment does not apply.

claims for false imprisonment, malicious prosecution, conversion, unreasonable search and seizure, and civil conspiracy.[3]

DISCUSSION

Defendants attack Wright's Complaint as an improper shotgun pleading. In the alternative, they maintain that it fails to state a claim.

## I. **Wright's Complaint Is Not an Improper Shotgun Pleading**

A shotgun pleading is a pleading that violates either Federal Rule of Civil Procedure 8(a)(2) or Federal Rule of Civil Procedure 10(b). *Weiland v. Palm Beach Cty. Sheriff's Office*, No. 13-14396, 2015 WL 4098270, at *4 (11th Cir. July 8, 2015). "Rule 8(a)(2) requires a complaint to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Rule 10(b) requires a party to state his claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

The problem with shotgun pleadings "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the

---

[3]   Wright concedes that he may not pursue his state law claims against Bolen, Bracewell, and Wofford, so those claims are dismissed.

grounds upon which each claim rests." *Weiland*, 2015 WL 4098270, at *5. It is true that Wright's Complaint contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* Perhaps he should not have done that. But "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Id.* at *6.

It is not difficult to understand what the Defendants "were alleged to have done and why they were liable for doing it." *Id.* Count I alleges that Defendants' search of the Wright property violated the Fourth Amendment because Watson lied in the affidavit supporting his search warrant application. Count I further alleges that all of the other Defendants, who were on the scene with Watson, participated in the decision to manufacture evidence to support probable cause to search. Count XI alleges a similar claim for unreasonable search under Art. I, Sec. I, Par. XIII of the Georgia Constitution.[4] Count II alleges

---

[4] In a footnote of their brief, the Columbus Defendants question, without citing any authority, whether Wright may bring claims directly under the Georgia Constitution. It is clear that Wright may not bring claims against *state* officers under the Georgia Constitution because the Georgia Tort Claims Act provides the only avenue for suit against state officers. *Davis v. Standifer*, 275 Ga. App. 769, 772 n.2, 621 S.E.2d 852, 855 n.2 (2005) It is also true that Georgia does not have

that Defendants did not have probable cause to arrest Wright, but they did it anyway or were present on the scene and did not stop the other officers from unreasonably seizing Wright. Count VIII alleges a similar claim for state law false imprisonment, and Count XI alleges a similar claim for unreasonable seizure under the Georgia Constitution. Count III alleges that Defendants did not have probable cause to believe that Wright's personal items were instrumentalities used in the manufacture and sale of illegal drugs, but they seized it anyway or were present on the scene and did not stop the other officers from unreasonably seizing the property. Count X alleges a state law conversion claim based on the same facts. Count IV alleges that Watson caused a felony criminal prosecution to be initiated against Wright based on Defendants' false statements. Count IV further alleges that all of the Defendants knew there was no probable cause for the prosecution but allowed it to continue anyway. Count IX alleges an analogous state law claim for malicious prosecution. Count V alleges that all the Defendants collaborated on the idea to manufacture evidence to support probable cause to search the Wright property and that they

---

a statute analogous to § 1983. *Id.* But the Georgia Supreme Court has analyzed the merits of a claim under Art. I, Sec. I, Par. XIII of the Georgia Constitution, implying that a plaintiff may bring a direct action under that provision. *See City of E. Point v. Smith*, 258 Ga. 111, 112 & n.3, 365 S.E. 432, 434 & n.3 (1988). As a practical matter, Wright's attempted claims under the Georgia Constitution are virtually identical to his state law claims for false imprisonment, malicious prosecution, and conversion.

participated in accomplishing the allegedly unlawful search. Count XIII alleges an analogous state law claim for civil conspiracy, and Count XII alleges a similar claim based on a state law joint venture theory.   Count VI alleges that Watson applied for the search warrant based on a false affidavit, that all the other Defendants knew he planned to do so but failed to stop him, and that all the other officers knew the search warrant was based on fabricated evidence but participated in the search anyway.   Count VII alleges that Armbrust, Austin, and Pitts had supervisory authority over other Defendants and were present on the scene but did not stop their subordinates from violating Wright's Fourth Amendment rights.

In sum, the Court concludes that the "counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Weiland*, 2015 WL 4098270, at *7.   "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'"   *Id.* (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Here, it is not virtually impossible to know which allegations of fact are intended to support which claims for relief.   The Court thus declines to dismiss Wright's Complaint under Rules 8(a)(2) and 10(b).

**II.  Wright's Complaint Does Not Fail to State a Claim**

Defendants contend that Wright's Complaint fails to state a claim because even if his factual allegations are true, they are entitled to qualified immunity on Wright's federal claims and official immunity on his state law claims.

> A.   Wright Adequately Alleges Fourth Amendment Violations

> > 1.   *Unreasonable Search and Seizure Claims*

Wright alleges that Defendants violated his Fourth Amendment rights by searching his home pursuant to an arrest warrant they obtained by manufacturing evidence.  Wright further asserts that Defendants violated his Fourth Amendment rights by arresting him for marijuana possession after Defendants found small amounts of marijuana in his home during the search pursuant to the allegedly invalid warrant.  Defendants argue that they are entitled to qualified immunity on these claims. To be entitled to qualified immunity at this stage of the litigation, Defendants must show that the Complaint, taken as true, does not sufficiently allege that Defendants violated a clearly established constitutional right.  *See Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (explaining qualified immunity analysis).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

"Generally, a search is reasonable under the Fourth Amendment when supported by a warrant or when the search fits within an established exception to the warrant requirement." *United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006). Defendants contend that the warrant was valid and do not argue that their search of the Wright property falls within an exception to the warrant requirement, so the key question for the Court is whether Wright adequately alleges that the warrant was invalid.

Wright asserts that Defendants intentionally falsified facts to support probable cause for the search warrant. Defendants do not dispute that "falsifying facts to establish probable cause is patently unconstitutional." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). Defendants also do not dispute that a search warrant "may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth." *Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002). Defendants argue, however, that the allegedly fabricated facts about the marijuana seedlings were not necessary to a finding of probable cause. If a search warrant contains "sufficient content to support a finding of probable cause" without the falsified facts, then the warrant is valid. *Id.* at 1235 (addressing the issue at the summary judgment stage).

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). Defendants contend that probable cause existed to search the Wright property because officers saw (1) bags of a single brand of potting soil, (2) similar wire dog crates, and (3) Solo cups at both the Wright property and the marijuana grow site. Defendants argue that these facts tie the Wrights to the marijuana grow site and are sufficient to establish probable cause for a warrant to search the Wright property.

In support of their assertion that these items were at the Wright property and the marijuana grow site, Defendants rely on Watson's affidavit, which Wright alleges contains falsified information. Defendants contend that the Court should consider the affidavit, which is a matter outside the pleadings, without converting the motions to dismiss to motions for summary judgment because the affidavit is central to Wright's claims. "It is true that documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6)." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014). But Wright's claims are based on his

13

allegation that the affidavit contains falsified information. Wright did not make any allegations about the potting soil, dog crates, or Solo cups in his Complaint, and Wright did not acknowledge in his Complaint or otherwise that the potting soil, dog crates, and Solo cups were present at both locations. The Court certainly cannot consider the contents of the affidavit as true in ruling on the motion to dismiss. *See id.* ("Where a civil rights plaintiff attaches a police report to his complaint and alleges that it is false, . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss.").

Even if the Court did consider the contents of the affidavit as true, it is doubtful that the presence of common items like potting soil, dog crates, and Solo cups at both locations supports a finding of probable cause. Plenty of homeowners in Middle Georgia purchase potting soil for innocent purposes every day; those who have or have had dogs often use wire crates; and the Solo cup is so ubiquitous that it is the subject of a popular country music song.[5] Defendants do not contend that there was anything special or unique about these ordinary, innocuous items such that the presence of the items at both locations "allow a conclusion that there is a fair

---

[5] Toby Keith, *Red Solo Cup*, *on* Clancy's Tavern (Show Dog-Universal Music 2011).

probability of finding contraband or evidence at" the Wright property. *Brundidge*, 170 F.3d at 1352. And, if the allegations in Wright's Complaint are taken as true (as the Court must do at the motion to dismiss stage), Defendants themselves did not believe that what they saw at the Wright property gave rise to probable cause because they thought they had to strengthen their allegations by lying about seeing marijuana seedlings.

For all of these reasons, the Court finds that Wright sufficiently alleged that Watson's false statement regarding the marijuana plants was necessary to a finding of probable cause. And since the law is clearly established that "falsifying facts to establish probable cause is patently unconstitutional," *Kingsland*, 382 F.3d at 1232, Watson is not entitled to qualified immunity on Wright's Fourth Amendment claims based on the search, Wright's arrest based on evidence found during the search, or the seizure of Wright's personal property based on evidence found during the search. If the search warrant was invalid, then the officers had no lawful basis for searching the Wright property.[6] Without a lawful search, the officers would

---

[6] The Court notes that if Wright does not ultimately present enough evidence for a jury to conclude that Watson lied about spotting the marijuana seedlings on the Wright property, then the search warrant is valid, so Defendants would be entitled to qualified immunity with regard to the arrest and the property seizure. It is a crime to possess any amount of marijuana in Georgia. O.C.G.A. § 16-13-2(b) (making it a misdemeanor to possess one ounce or less of marijuana); O.C.G.A. § 16-13-30(j) (making it a felony to possess more than one ounce of marijuana). "Possession may be either actual or

not have found the small amount of marijuana in the house, and they would not have had probable cause to arrest Wright for marijuana possession or to seize his belongings.

The next question is whether Wright sufficiently alleged that the remaining Defendants violated clearly established law. "Conspiring to violate another person's constitutional rights violates section 1983." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). Wright alleges that all Defendants were on the scene together. He further alleges that all Defendants conferred with each other and decided to seek a search warrant, knowing "that they needed to make a sufficient showing of probable cause to convince a magistrate to issue the warrant." Compl. ¶ 35. In sum, Wright alleges that all Defendants gathered on the scene and participated in the decision to manufacture evidence to support a search warrant even though they knew they did not have probable cause to search the Wrights' home. And he asserts that all Defendants participated in searching his home, arresting him, and/or seizing his belongings even though they knew the search warrant

---

constructive. Constructive possession exists where a person though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing." *Bailey v. State*, 294 Ga. App. 437, 439, 669 S.E.2d 453, 456 (2008). A person's ownership or control of the premises gives "rise to a rebuttable presumption that the [person] possessed the contraband found on the premises." *Id.* at 440, 669 S.E.2d at 456. Wright admits that he lived at the Wright property, which could reasonably be construed as an admission that he controlled the premises and thus had constructive possession of the marijuana Defendants found there.

was invalid. Thus, Wright sufficiently alleges that all Defendants communicated with each other and "reached an understanding to violate" his Fourth Amendment rights. *Rowe*, 279 F.3d at 1283. Wright must ultimately produce *evidence* of each Defendant's role in the alleged conspiracy, but "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts*, 495 F.3d at 1295 (quoting *Twombly*, 550 U.S. at 556).

### 2. Malicious Prosecution Claims

In addition to his unreasonable search and seizure claims, Wright asserts malicious prosecution claims against all Defendants. The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Id.* Those elements include "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 882.

Wright contends that after the allegedly unlawful search revealed a small amount of marijuana in his house, Watson swore out an arrest warrant charging Wright with several marijuana-related offenses and made a report to support a civil forfeiture action.  Wright contends that Watson took these actions even though he knew the search that revealed the small amount of marijuana was illegal and that such evidence would thus not be admissible in a criminal proceeding against Wright.  Wright also asserts that he suffered damages as a result of Watson's actions.  Wright did not, however, allege facts from which it can be reasonably inferred that any other Defendant participated in instituting or continuing the prosecution.[7]  Therefore, to the extent Wright makes § 1983 or state law malicious prosecution claims against Defendants other than Watson, those claims are dismissed.

Watson argues that he cannot be liable for malicious prosecution because the independent decisions of the prosecutors broke the chain of causation.  But the "intervening acts" rule Watson relies on does not break the chain of causation if "plaintiff can show that these intervening acts *were the result of deception or undue pressure by the defendant policemen.*"

---

[7] Wright alleged that all Defendants conferred regarding the search warrant and either helped with the search, the arrest, or the seizure of his belongings even though they knew the search warrant was invalid.  He did not make any similar allegations with regard to Watson's decision to swear out arrest warrants.

*Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989) (emphasis added). Here, Wright alleges that any actions taken by the prosecutor were based on false statements by Watson and other Defendants.

Watson also fleetingly suggests that there was no prosecution to support a malicious prosecution claim. Wright alleges that Watson swore out a warrant against him and that criminal charges were pending against him in the Harris County Superior Court until the prosecutor decided not to pursue them. Drawing all reasonable inferences in Wright's favor, Wright sufficiently alleged a prosecution that terminated in his favor. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1144-45 (11th Cir. 2007) (finding a viable malicious prosecution claim against an officer who brought false charges against the plaintiff).

B.  Wright's State Law Claims Are Not Barred

Defendants contend that all of Wright's state law claims against them are barred by official immunity.[8] "The doctrine of official immunity 'protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption.'" *Lagroon v. Lawson*, 328 Ga. App. 614, 618, 759 S.E.2d 878, 882 (2014) (quoting *McDowell v. Smith*, 285

---

[8] Again, Wright concedes that he may not pursue his state law claims against Bolen, Bracewell, and Wofford, so those claims are dismissed.

Ga. 592, 593, 678 S.E.2d 922, 924 (2009)).   It is undisputed that the challenged actions in this case are discretionary, so Defendants "are immune from suit unless they acted with wilfulness or actual malice." *Id.* at 619, 759 S.E.2d at 882. "Actual malice requires a showing that the actor had a deliberate intention to do wrong," and "wilful conduct is based on an actual intention to do harm or inflict injury." *Id.* Here, Wright alleges that Defendants knew they did not have probable cause to search the Wright property but colluded with each other to manufacture evidence to support the search warrant.   These allegations support an inference that Defendants acted with actual malice. *Cf. Bateast v. DeKalb Cty.*, 258 Ga. App. 131, 132-33, 572 S.E.2d 756, 758 (2002) (finding genuine fact dispute on official immunity because jury could infer that officers arrested the plaintiff despite knowing she did not commit any crimes).   Accordingly, Defendants are not entitled to official immunity at this stage in the litigation.

CONCLUSION

For the reasons set forth above, the Court denies Defendants' motions to dismiss (ECF Nos. 17, 19, 21, 22) as to Wright's Fourth Amendment unreasonable search and seizure claims against all Defendants, Wright's malicious prosecution claims against Defendant Watson, and his state law claims against all Defendants except Bolen, Bracewell, and Wofford.   Wright's

20

Complaint does not state a malicious prosecution claim against any Defendant except Watson, so his malicious prosecution claims against the other Defendants are dismissed.   Wright concedes that his state law claims against Bolen, Bracewell, and Wofford should be dismissed, so they are dismissed.   Defendants' motions to stay discovery (ECF Nos. 18, 20, 23) are moot.

IT IS SO ORDERED, this 13th day of August, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA